## ABRAHAM ISAACS v. THE STATE.

Under the Code, a homicide committed with a dagger, under circumstances which would otherwise render the killing manslaughter, becomes murder and is punished accordingly.

If the slayer provoked the deceased by profane language and angry gesticulations to strike him a blow with a stick, which was not followed up in such manner as to produce a reasonable expectation or fear of death, or some serious bodily injury, and which did not endanger his life, he cannot be justified on the ground of self-defence in retreating out of danger, drawing a dagger, returning to the conflict, and killing his antagonist.

APPEAL from Walker. Tried below before the Hon. Peter W. Gray.

Indictment against Abraham Isaacs for the murder of Samuel F. Spillar, charged to have been committed on the 18th day of June, 1859, with a dagger.

The defendant had been occupying a room of the office of the deceased, using it in carrying on his business as a shoemaker. Complaint had been made to the deceased, that the defendant annoyed the school girls in passing by, by looking at them out of his window and speaking to them, and was requested to have the annoyance corrected. The deceased replied that the defendant was

a good man, and only required to be advised as to his behavior; and he promised that it should cease. The deceased thrice closed the window by tacking cloth over it; which the defendant twice removed. The last time, which was before breakfast on the morning of the difficulty, whilst in the act of tacking the cloth, the defendant drew his dagger on the deceased, who left the room and went to his residence and obtained a shot gun; the defendant stated in connection with a declaration to one of the witnesses of having drawn the dagger, that the deceased drew on him his shot gun, and that he was afraid to return to the office for fear the deceased would shoot him.

The deceased threw the defendant's tools out of the office; and the defendant went away and engaged a wagon to remove them. During the morning, on his return towards the town of Waverly, (in which the office was situated,) in company with Fitzpatrick, with whom he had fallen in at Emore's, (to whom he applied for the wagon,) at the school house he was told by two of the students that Dr. Spillar was at his office and wished to see him and have a settlement before he left for Danville, where he was going that morning. A conversation ensued concerning the difficulty which had taken place. One of his boys told the defendant that Dr. Spillar was not angry with him. The defendant replied "he would kill him; that he had thrown his tools out of the office." On cross-examination the witness said that the defendant is a foreigner and speaks English badly; that some portion of the remark he did not understand; but heard the word "kill." The defendant then asked Fitzpatrick to go with him to the office; where they went accordingly.

One of the school boys had been sent to inform Dr. Spillar that the defendant was coming, who found him in front of his office engaged in mending his saddle; on receiving the message, he said he was glad of it, as he wished to have a settlement with him before he left for Montgomery County, and requested the youth to bring his stick from the office, which he accordingly did. The deceased placed the stick on the stump which he was using in mending the saddle.

The deceased was thus engaged when the defendant came up.

The former remarked that he wanted no difficulty; the latter replied to the same effect. The defendant commenced cursing and using abusive epithets towards, and shook his fists in the face of the deceased. The deceased replied, " if he did not go away he would frail him with a stick." He continued talking and shaking his hands at the deceased, who then struck him with the stick. Defendant then retreated twenty or thirty feet, drew his dagger, and returned upon the deceased with it; the latter then struck him with the stick a second time, and was retreating when he struck the third blow, which knocked the defendant down on his knees. He arose, caught the deceased by the collar, and stabbed him with the dagger, from which wound he died.

A version as to this encounter, different from the foregoing, was given by Fitzpatrick, who, it appears, was, at the time he testified, intoxicated, and whose testimony was given in a disconnected manner on the trial. The other witness stated that Fitzpatrick was not in a position which enabled him to see the first part of the transaction. The court charged the jury as to the law of the case, viewed with reference to murder, either in the first or second degree, and instructed them that the defendant might, according to the facts, be convicted of either, or found not guilty at all. " That if the killing was done in the necessary defense of the slayer, that is, to protect or save himself from immediate and imminent danger of death or great bodily harm from the violence of the deceased, which was not provoked or sought for by the slayer, and which could not be avoided by any other means except retreating, then it would not be an unlawful killing, but justifiable homicide. If, however, it was committed, not in necessary self-defense, and not from a contest provoked or sought by the slayer, but in course of a sudden affray or contest, and under the immediate influence of sudden passion, produced by an adequate cause, (as a violent blow,) then or immediately before inflicted; then it would be manslaughter, unless it was committed with a dagger. But if it was not justifiable, and was not committed in a sudden quarrel, and under the influence of sudden passion, arising from an adequate cause, or if done with a dagger, then it would be murder in some degree."

The charge of the court proceeded to define the elements of murder in the first and second degrees, and also what constituted manslaughter, as also the doctrine of self-defence as a justification. On the last head the court charged the jury that, "homicide is permitted and justifiable by law, when inflicted for the purpose only of preventing an unlawful and violent attack on one's person, of such a nature as produces a reasonable expectation or fear of death, or great bodily harm then about to be inflicted. In other words, the killing must take place while the person killed was in the very act of making such unlawful and violent attack, and under such circumstances that the party assailed can not resort to any other legal means to save and protect himself except retreating or running, which he is not bound to do. If the party has time and opportunity, with safety to himself, to resort to other means to protect himself, then he is not justifiable in killing. It is the necessity of the case, and that only which justifies a killing— on that necessity the right to kill rests, and when the necessity ceases, the right no longer exists. This limitation, which the law puts on the right of self-defence, is founded on the same law of nature and reason which gives the right of defence; and it does not restrain it, but protects it and prevents its abuse by those who would, under its color and the pretence of defence, seek to gratify revenge or an occasion to kill. * * * *
" If, then, under these rules, you believe the accused acted only in his necessary self-defence, you will find him 'not guilty,' but if you believe otherwise from the facts, that the accused might with safety to himself have avoided the conflict and all danger, by another means than killing or retreating; or that at the time of the killing he was not in immediate danger of serious bodily harm then about to be inflicted, or that he had sought the contest, and provoked the attack on him in revenge for previous difficulties or quarrels, then he was not justifiable, and you will inquire whether the killing was manslaughter or murder."

The jury found the defendant guilty of murder in the second degree, and assessed his punishment at confinement in the penitentiary for twenty years. Judgment of the court in accordance with the verdict.

12Y

Isaacs v. The State.

*Branch & Abercrombie,* for appellant.

*Attorney-General* and *A. P. Wiley,* for the appellee.

BELL, J.—The third specification in the assignment of errors is, that the charge of the court is contrary to the law, but in the briefs furnished by counsel, no error in the instructions given by the court to the jury is pointed out. We are of opinion that the charge of the court is free from error, and contains a very full exposition of the law of the case. It is clearly shown by the testimony that the wound which caused the death of Dr. Spillar, was inflicted by the appellant with a dirk or dagger. Article 610 of the Penal Code provides that " if any person be killed with a bowie knife or dagger, under circumstances which would otherwise render the homicide a case of manslaughter, the killing shall nevertheless be deemed murder, and punished accordingly."

It follows that the judgment of the court below against the appellant must be affirmed, unless it can be established that the evidence shows a case of excusable or justifiable homicide. If the killing took place under circumstances which would otherwise render it a case of manslaughter, then it is elevated to the degree of murder by the provision of the code, because a dagger was the weapon used by the slayer. We are of opinion that the evidence shows very clearly that the accused was under no necessity to take the life of Dr. Spillar at the moment when he struck the fatal blow. It is true that the deceased struck the first blow, being excited to do so by the profane language and the angry and insulting gesticulations of the accused. Dr. Spillar may not have been legally justifiable in striking the blow, but the accused was not justifiable in making the assault by Spillar the occasion of taking his life. It is not shown that Dr. Spillar offered to follow up his first blow by a further assault; but it is shown that the accused retreated twenty or thirty feet after Dr. Spillar struck the blow, drew his dagger and returned to the conflict. His life was not in danger. He used greater force than he was justifiable in using, and the jury could not properly have declared by their verdict that the homicide was in the necessary defence of his per-

son from an unlawful attack, which produced reasonable expectation or fear of death, or of some serious bodily injury. The accused provoked the blow which was dealt by Spillar, who is shown to have been a mild and peaceful man, and it would be subversive of every principle of the criminal law to hold that a man was justifiable in taking the life of another who, under much provocation, had struck a single blow without following it up in such a manner as to endanger life. As has been before said, if the killing was not justifiable, it was at least manslaughter, and if manslaughter from its other circumstances, then it became murder because of the use of the dagger.

The judgment of the court below is affirmed.

Judgment affirmed.