### R. HOLLIS *v.* THE STATE.

1. JURY LAW. — If, for aught that appears in the record, the panel which tried the accused was composed of unobjectionable jurors, it is not material on appeal whether his challenges for cause were overruled correctly or incorrectly. To show error to his prejudice, it must appear not only that his peremptory challenges were exhausted, but that an objectionable juror was forced upon him.

2. SELF-DEFENCE. — To one who himself brings on an affray, or who prepares himself for an encounter in which he intends to wreak his malice, the plea of self-defence is not available though his own life was imperilled in the affray.

APPEAL from the District Court of Erath. Tried below before the Hon. T. L. NUGENT.

The indictment charged the appellant with the murder of George Montgomery, March 23, 1878, by shooting him with a pistol. The jury found him guilty of murder in the second degree, and assessed his punishment at thirty years in the penitentiary.

It appears from the evidence that the deceased and the defendant, who were related to each other, were at a schoolhouse where a debate was going on, the night of the difficulty. The trouble between them seems to have been precipitated by the defendant taking the part of a youth named King, who was slapped by the deceased. Blows were exchanged between the deceased and the defendant in consequence of the latter's interference, but the conflict between

them soon came to a seeming termination. This collision occurred a short distance from the school-house, and the deceased, on its cessation, walked to the door of the school-house, where Henry Woalf, a State's witness, was standing, and telling Woalf that the defendant had struck him in the back with a six-shooter, asked him to come and see if he was hurt. They walked some thirty or forty yards away from the school-house, and Woalf examined Montgomery's back, and found a wound which seemed to have been made with a knife, the shirt being also cut. While this examination was going on, Montgomery was cursing the defendant for striking him with the six-shooter, and the defendant came up and said it was a d—d lie, and if Montgomery said it again he would kill him. Montgomery replied that he had said it once, and, by G—d, he would say it again; and then the defendant drew his pistol and fired upon Montgomery, who received the ball in the left eye and was instantly killed. According to Woalf and other witnesses, Montgomery made no motion like drawing a weapon, but had gesticulated with his open hand, and was five or six feet from the defendant when the latter fired upon him. No weapons were found upon his body. There was evidence of previous threats of the deceased against the defendant on account of some indefinite scandal, but it was not shown that these threats had been communicated to the defendant.

*Martin & Neill,* for the appellant.

*Thomas Ball,* Assistant Attorney-General, for the State.

WHITE, P. J. The only bill of exceptions appearing in the record was reserved to the ruling of the court upon the competency of two jurors who had been summoned on the special *venire,* and who, upon examination as to their qualifications, were challenged for cause by the defendant; and the challenge being overruled, he then challenged them

peremptorily. It further appears that defendant exhausted his peremptory challenges. According to the bill of exceptions, neither of these jurors appear from hearsay or otherwise to have had, established in their minds, such a conclusion of the guilt or innocence of defendant as would likely influence their action in finding a verdict. Code Cr. Proc., art. 636; *Grissom* v. *The State*, 4 Texas Ct. App. 384; *Rothschild* v. *The State*, 7 Texas Ct. App. 519.

But, if they were subject to challenge for cause, the defendant got rid of them by his peremptory challenges, and they neither sat on the jury nor tried him. True, he says he exhausted his peremptory challenges. Suppose he did; that fact alone would not entitle him to have his case reversed because some of his peremptory challenges were expended upon incompetent jurors. In addition to the fact that he was compelled to use his peremptory challenge upon a juror who should have been made to stand aside for cause, he must show the further fact that, after the peremptory challenges were exhausted, an incompetent or otherwise obnoxious and objectionable juror, and whom he would not have accepted if he had had further challenges, was forced upon him to his prejudice, and actually sat upon his trial. *Sharp* v. *The State*, 6 Texas Ct. App. 650; *Myers* v. *The State*, 7 Texas Ct. App. 641; *Grissom* v. *The State*, *ante*, p. 386; *McKinney* v. *The State*, *post*, p. 626. For aught that appears, the jury may have been completed by an unexceptionable juror, called immediately after defendant had exhausted his last peremptory challenge upon the jurors mentioned in the bill. And certainly when the jury which at last tries the prisoner is composed of unobjectionable jurors, he has no just ground to complain.

It is insisted that the court erred in the following portion of the eighth subdivision of the charge, viz. : " He who seeks and brings on a difficulty with his antagonist, and in such difficulty kills him, will not be justified in law, even though it should appear that his life or person was endangered."

This instruction was in harmony with the rule laid down by our Supreme Court in *Gilleland* v. *The State*, where it was said : " If the defendant voluntarily engages in a combat, knowing that it will or may probably produce the death either of his adversary or himself, or by his own wrongful act brings about the necessity of taking the life of another to prevent being killed himself, he cannot say that such killing was in his necessary self-defence. But the killing will be imputed to malice, express or implied, by reason of the wrongful act which brought it about, or malice from which it was done. 2 Bishop's Cr. Proc. 643. Whether the defendant is actuated by malice, or his own wrong has occasioned the necessity on which he slays his adversary, or he does so to prevent the perpetration by the party slain of one of the offences named in the Code (Pasc. Dig., art. 2226), must depend upon the circumstances of each case, and is always a question of fact to be determined by the jury." 44 Texas, 356 ; *Isaacs* v. *The State*, 25 Texas, 174. " The plea of self-defence is not available by one who himself brings on an affray, or who prepares himself for an encounter, in which he intends to wreak his malice." *The State* v. *Maguire*, 69 Mo. 197.

Appellant has no just ground of complaint with reference to the general charge of the court ; it was much more favorable than he had any right to expect from the evidence as we read it in the statement of facts. There is not the slightest semblance of self-defence in the testimony. He provoked the difficulty in the first instance, and inflicted a wound upon deceased with a knife or other instrument. He renews the difficulty again, and, because deceased said he had cut or struck him, he tells him he will kill him if he repeats it ; and when deceased, who was warned, repeats it, true to his word, he shoots him down and then flees the country. He has no right to complain of the verdict and judgment finding him guilty of murder of the second degree. Under the facts, he could justly have been found

guilty of no less degree of culpable homicide.   As far as we can see from the record sent up on his appeal, he has had a fair and impartial trial, in which no error was committed requiring a reversal of the judgment, which is in all things affirmed.

*Affirmed.*