## J. W. WOODARD *v.* THE STATE.

1. THEFT. —Privately stealing from the person of another is specifically defined by the Penal Code as an offence. To constitute it, the theft must be from the person, and not merely in the presence of the dispossessed party, and be committed without his knowledge, or so suddenly as to preclude resistance before asportation. If an indictment contains these allegations, in addition to those necessary to charge theft in general, it is substantially sufficient to charge "theft from the person."

2. CONTINUANCE. —Under the Revised Code of Procedure, all applications *in limine* for continuances are subjected to the discretion of the trial judge, and the refusal of even a first application will not be revised on appeal when no abuse of that discretion to the prejudice of the defendant is apparent.

3. JURY LAW. —Recourse is to be had to the Revised Civil Statutes for the general rules regulating the organization of juries, and by those regulations much is practically confided to the trial courts. On appeal, the primary inquiry is whether a fair and impartial jury tried the case, and not whether every ruling of the trial court in forming the jury was correct. Note the facts of this case in illustration of these rulings.

4. CHALLENGE TO THE ARRAY. — Only upon the grounds and in the manner prescribed in the Code of Procedure does a challenge lie to the array of petit jurors.

APPEAL from the District Court of Harrison. Tried below before the Hon. A. J. BOOTY.

The opinion of the court supplies all facts relevant to the rulings.

*Pope & Pope*, for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

Winkler, J.   The appellant was indicted, tried, and convicted in the court below for theft, from the person of one Quincy, of certain moneys and personal property of said Quincy, of the alleged value, in the aggregate, of $50, and his punishment was assessed by the jury at seven years' confinement in the State penitentiary.   The appellant, defendant in the court below, moved to quash the indictment, first, because it charges no offence against the laws of the State; second, because the offence is not charged in plain and intelligible words; and, third, because the word "did" is left out of the charging part of the indictment.

These grounds are untenable.   The act of privately stealing from the person of another is made, *eo nomine*, an offence against the law, when the thing stolen was taken privately, was taken from the person, and not merely in his presence; and the theft must be committed without the knowledge of the person from whom the property is taken, or so suddenly as not to allow time to make resistance before the property is carried away.   Penal Code, arts. 744, 745.   An indictment which contains these essential averments, and which otherwise charges or embraces the general definition of theft as defined in art. 724, would satisfy the demands of the law and sufficiently describe the offence of theft from the person.   The indictment in the present case meets all these requisites of the Code, and in these respects meets the second ground of objection.   The third ground seems to have been set up by inadvertence, for it is not supported, but is directly contradicted by the record.   It is

true the pleader did not, as is now usually the case, com-
mence the charging portion of the indictment by an allega-
tion that the defendant did thus and so ; but the indictment,
after giving a description of the money, and alleging that
it belonged to the person from whom it was taken, and
stating the aggregate value, etc., proceeds in this language :
" did then and there privately and fraudulently steal and
take from the person of the said Thomas Quincy, and from
and out of the possession of the said Thomas Quincy, with-
out the knowledge or consent," etc.    It is conceded that the
word in question is the most forcible and appropriate one in
which to make an accusation, — that is, to say that the party
*did* the act which constitutes the offence,— but it will hardly
be seriously contended that it should be inserted in connec-
tion with an averment merely descriptive in character.    It
will be deemed sufficient if it is used in appropriate connec-
tion with the charge, even conceding its indispensability.
It is certainly an appropriate word, and there is no necessity
of speculating whether it is the only word sufficiently
appropriate, or whether some other word would be of pre-
cisely the same force and signification or not.    Those who
desire to pursue the subject further are referred to the cases
collected in *Ewing* v. *The State*, 1 Texas Ct. App. 362.
We are of opinion the indictment is amply sufficient to sup-
port the verdict and judgment, and believe there was no
error in overruling the motion to quash.

An important question of practice is presented by one of
the defendant's bills of exception.    The bill of exceptions,
as presented to the judge, states substantially that the case
was called for trial on June 29, 1880 ; that the defendant
protested against his being called on to announce, because
the court had announced, a few days before, that there
would be no further business transacted during the term,
and the court had passed from the criminal docket ; that
the court set the case for trial on the said day without the
consent of the defendant ; that the jury that was in the

box to try the defendant was not drawn by the jury-com-
missioners, as required by law, and that they were sum-
moned by the sheriff on the verbal order of the court, and
the clerk did not issue a *venire facias* to the sheriff to sum-
mon the jury, but that the sheriff proceeded without any
authority save the verbal order of the court. The court
overruled this protest of the defendant, and forced him to
announce for trial. The defendant announced not ready,
and presented his motion for a continuance, which was by
the court overruled, and to which ruling the defendant ex-
cepted. The defendant then moved the court to quash the
*venire* on the grounds set out above, with this in addition :
because the jury was drawn without the knowledge and con-
sent of the defendant, and because they were not drawn
from the jury-box as required by law, there being more
names in the jury-box than sufficient to get a jury to try
the defendant ; which motion the court overruled, and the
defendant excepted.

The judge, in giving a bill of exceptions to these rulings,
appends the following explanation : " This defendant's case
was called for trial about the 8th of June, and the State
announced ready for trial, and the defendant took till the
following morning to make a showing for a continuance.
The court proceeded with other business, and for a period
of ten days or more the case of this defendant was not
called again. In the meantime a forfeiture was taken on
the recognizance of the defendant, and a new *capias* issued
for his arrest ; and the criminal business was disposed of,
and it was the common understanding, though not an-
nounced from the bench, that I recollect, that no more
criminal trials would be had during the term ; and on
the twenty-second day of June, and after the jury for the
ninth week had been discharged, the defendant was rear-
rested ; and on Friday, the 25th of June, I ordered the
sheriff, who, together with all his deputies, had been sworn
as required in art. 3056, Revised Statutes, to summon

thirty-six persons to appear before the court on Tuesday, the 29th of June, to serve as jurors for the tenth week of the term, no jurors having been drawn by the jury-commissioners for that week. I ordered the sheriff to summon thirty-six persons, as before stated, after informing the sheriff and his deputies fully as to the qualifications of jurors. These jurors appeared in accordance with said summons, and from them the jury for the trial of this cause was procured. While no *venire facias* issued, the minutes of the court showed the action of the court in ordering a jury."

The matters involved in this controversy between court and counsel, as disclosed in the bill of exceptions as tendered to the judge, and in the explanations given by the judge and the reasons stated for his action, relate in a great degree to what properly pertains to the business of the judge, dependent upon such rules of law as have been prescribed with regard to the due order of conducting the business of the court. Two features of the question are perhaps all that require consideration at our hands. One is the refusal to grant the defendant a continuance, and the other the overruling of the challenge to the array of jurors from which a jury was procured for the trial.

With reference to the application for a continuance, it is perhaps unnecessary to say more than that, looking back through the testimony as developed on the trial, — to say nothing as to the defendant's escape from custody after he had obtained time to prepare an affidavit for a continuance, — we are of opinion the discretion of the judge was very properly exercised in refusing a new trial on account of the absent witness, though it should have been granted if in his judgment the evidence of the absent witness " was of a material character, and the facts set forth in said application were probably true," as directed in subdivision 6, art. 560, Code of Criminal Procedure. The granting or refusing of a continuance, when the application was first presented, was

purely within the discretion of the court, under the law in force at the time of the trial. Even a first application is no longer a matter of right, but is confided to the sound discretion of the court. Ibid.; *Grissom* v. *The State*, 8 Texas Ct. App. 386. And the action of the trial court will not be revised on appeal, unless it is made to appear that the discretion confided to the judge has been abused to the defendant's prejudice.

With regard to the objections to the list of jurors from which the jury was formed, and the several objections urged against them, it is perhaps sufficient to say that in questions of this character the primary object to be attained is that a fair and impartial jury be secured for the particular trial; and it is the settled practice of this court to inquire, first, whether a fair, impartial, and legal jury tried the case; and when this is found to have been the case, or the contrary is not shown, we would not be warranted in a reversal of the judgment even though we were of the opinion that errors had been committed relating to the formation of the jury, but which did not involve any of the individual jurors who actually sat upon the trial. *Hollis* v. *The State*, 8 Tex. Ct. App. 620; *McKinney* v. *The State*, 8 Texas Ct. App. 620; *Cock* v. *The State*, 8 Texas Ct. App. 659.

The general rules with regard to jurors are found in the Revised Civil Statutes. In counties where the District Courts are held for more than one week, the law provides that " on Monday of each week of the court for which a jury shall be summoned, and for which there may be jury-trials, or when the jury-trials for the week have been set for some other day, then on such day the court may select thirty qualified jurors, or a greater or less number, in its discretion, to serve as jurors for the week. Should such selection, from any cause, not be made on the day appointed, it may be made on any subsequent day. Such jurors shall be selected from the names included in the jury-list for the week, if there be the required number of such in attendance

who are not excused by the court. If the requisite number of such jurors be not in attendance at any time, the court shall direct the sheriff to summon a sufficient number of qualified jurors to make up the requisite number of jurors." Rev. Stats., sects. 3051–3054.

Under these articles it will be found that much is confided to the trial judge, and we are of opinion that by a proper construction the action of the court in this case was substantially correct. At any rate, we are unable to see that there was anything which tended to deprive the defendant of a fair trial before an impartial jury. But, aside from this, the law seems to confine within certain limits a challenge to the array of petit jurors (Code Cr. Proc., arts. 623–625), and does not allow it to jurors who have been selected by jury-commissioners. And, aside from all this, a challenge to the array in any criminal case must be made under and in accordance with art. 626, Code of Criminal Procedure, which is as follows: "All challenges to the array must be made in writing, setting forth distinctly the grounds of such challenge, and when made by the defendant it must be supported by his affidavit, or the affidavit of some credible person." The requirements of this article of the Code seem not to have been observed. Taking one view of the case, as we find it set forth in the transcript, and without determining whether it was correct practice or not to have the jury summoned on an order of the court, without the issuance of a *venire facias*, we find in the action of the court in summoning the jury no grounds for interposition on our part.

There are several other questions of interest set up in the record and properly presented by bills of exception, and discussed in the able brief of counsel for the appellant, which we deem it unimportant to consider *seriatim* in this opinion, and for the reason that we deem them not erroneous, or, if so, not of such moment as to cause a reversal of the judgment. The indictment seems sufficient. The

court, in the charge to the jury, seems to have given appropriate instructions as to the law arising upon every issue made by the proofs ; and, the charge being complete within itself, there was no error in refusing the charges asked by the defendant. *Hunter* v. *The State*, 8 Texas Ct. App. 75.

Finding no material error in the proceedings of which the appellant can complain, and there being an abundance of testimony to support the verdict of the jury, the judgment is affirmed.

*Affirmed*.