## LOWE GILLELAND V. THE STATE.

1. MALICE—SELF-DEFENSE.—If defendant engaged in a combat, know-
ing that it might or would result in the death or some serious bodily
injury which might produce the death of his adversary or himself, or
by his own wrongful act brought about the necessity of taking life,
he cannot plead that such killing was in his necessary self-defense;
but the killing will be imputed to the malice expressed or implied
by reason of the wrongful act which brought it about.

2. SELF-DEFENSE.—Where it is manifest that the attack by the deceased
(to repel which the killing was done) was occasioned by the wrongful
acts of defendant, it is proper for the court to instruct the jury sub-
stantially that the killing must be in fact in self-defense, and not
colorably so, giving such instructions as would aid the jury in de-
termining the reality of the self-defense.

3. CONDITIONAL THREATS.—Where there is evidence of mutual threats
by the deceased and accused, and ill-feeling, and that the accused
started to hunt the deceased with the avowed purpose of using vio-
lence upon him, unless he should take back a charge made by
him against defendant, and that a collision ensued when both were
seeking each other, it is not error to refuse to instruct the jury that
the accused had the right to seek a peaceable interview with the
deceased to demand a retraction of the charge; the conditional
nature of the threats will not protect defendant from the conse-
quences of his deliberate act.

4. POWER OF DISTRICT JUDGES TO EXCHANGE DISTRICTS.—The right
to exchange districts with and to hold courts for other district judges
exists during the entire term of office of the district judge; it is not
confined to the period of the terms of court in his district.

5. MISCONDUCT OF A JUROR.—The action of the district judge in over-
ruling a motion for new trial based on misconduct of a juror will
not in general be overruled, and will not where there is a conflict of
evidence as to the fact of such misconduct.

6. SAME—AFFIDAVIT OF A JUROR may be received vindicating himself
against the charge of misconduct; and that the District Court took
such vindication against the affidavits of two other persons is not a
ground of reversal on appeal.

APPEAL from Dallas.   Tried below before the Hon. H.
Barksdale, holding the Criminal Court of Dallas.

Lowe Gilleland was indicted for the murder of Sam
Stevens, and was put upon his trial before Hon. H. Barks-

dale, who exchanged with the Judge of the Criminal Court of the city of Dallas.

Defendant was convicted, and his punishment fixed at ten years in the penitentiary. The facts appear in the opinion.

*Guy, McCoy*, and *McCoy & Ray*, attorneys for appellant, cited Paschal's Dig., arts. 2226, 2228, 2664, 2675, 2676, 3050, 3059; Hudson *v.* The State, 40 Tex., 18; Johnson *v.* The State, 27 Tex., 766; Thomas *v.* The State, 40 Tex., 37; Marshall *v.* The State, 40 Tex., 202; Isaacs *v.* The State, 25 Tex., 177; Atkinson *v.* The State, 20 Tex., 529; White *v.* The State, 36 Tex., 347; Monroe *v.* The State, 23 Txe., 220; Thomas *v.* The State, 40 Tex., 45; Billard *v.* The State, 30 Tex., 369; Const., art. 1, sec. 8; Hanks *v.* The State, 21 Tex., 528; Whart. on Cr. Law, 3 ed., sec. 3152; Ramadge *v.* Ryan, 9 Bing., 333; Troxdale *v.* The State, 9 Humph., 411; State *v.* Hopkins, 1 Bay, 372; United States *v.* Fries, 3 Dallas, 315; 1 Bishop's Cr. Proc., secs. 909, 910, n. 554; People *v.* Plummer, 9 Cal., 298; People *v.* Williams, 17 Cal., 142; McGuffin *v.* The State, 17 Ga., 497; Brennan *v.* The State, 33 Tex., 268; 1 Bishop's Cr. Proc., n. 555; Laws 2d sess. 14th Legis., 1875, pp. 44, 65; Laws 1873, p. 210.

*A. J. Peeler, Assistant Attorney General*, for the State, cited 1 Bishop's Cr. Proc., sec. 52; Paschal's Dig., art. 2664; Vaughan *v.* The State, 21 Tex., 752; Ross *v.* The State, 29 Tex., 499; O'Connell *v.* The State, 18 Tex., 344; Johnson *v.* The State, 27 Tex., 766; Hudson *v.* The State, 40 Tex., 12; Jones *v.* The State, 40 Tex., 188; Marshall *v.* The State, 40 Tex., 200; Billard *v.* The State, 30 Tex., 372; Paschal's Dig., arts. 1418 and note, 6122; Const., art. 5, sec. 11; Laws of 1875, p. 66; March *v.* The State, *supra*, 64.

MOORE, ASSOCIATE JUSTICE.—The objection that the venue

of the offense was not proved, as alleged in the indictment, is not well taken.   Moffit, one of the witnesses for the State, after testifying that he knew Stevens, whom appellant is charged to have murdered, says "he died in Lancaster, in Dallas county, Texas, of a gun-shot wound in the head.   I saw the flash of the pistol, fired by the defendant, that inflicted the wound.   Stevens lived some hours—from middle of afternoon.   He died some time early in the night." Though this witness does not state in direct terms that the wound which caused Stevens' death was inflicted in Lancascaster, Dallas county, yet from the details of the difficulty between the parties, in which the fatal shot was fired, given by him as well as several others, there is no room for a reasonable doubt that the homicide occurred in Lancaster, which was shown to be in Dallas county.   But the fact does not depend upon mere inference.   It is clearly and positively established by direct testimony.   Smith, also a witness for the State, says : " I was sitting in a barber's shop in Lancaster, on west side of public square ; defendant passed, and I heard him say something ; afterwards I saw deceased riding across the square in advance of the defendant.   Saw deceased in a turning position, when defendant fired ; thought defendant fired first.   Deceased was shot over the left eye."

Although the deceased may have been in the act of firing upon appellant when he was shot, and would have been guilty of murder had he killed appellant, it does not necessarily follow, as his counsel seem to insist, that the killing of the deceased by appellant must, from this fact, be regarded as an act of self-defense.   If so, the survivor in all cases of mutual combat could justify himself upon this ground.   The article of the code to which we are cited (568) is not applicable to cases where the killing is upon malice, although the deceased might have been equally in the wrong.   It is only when the homicide is inflicted for the purpose of preventing one of the offenses mentioned in this article, and not where the real motive and design is to kill

the deceased through malice, that a party is permitted or justified by it in taking the life of another. If the defendant voluntarily engages in a combat, knowing that it will or may result in death, or some serious bodily injury which may probably produce the death either of his adversary or himself, or by his own wrongful act brings about the necessity of taking the life of another to prevent being himself killed, he cannot say that such killing was in his necessary self-defense. But the killing will be imputed to malice, expressed or implied, by reason of the wrongful act which brought it about, or malice from which it was done. (2 Bish. Cr. Proc., 643.) Whether the defendant is actuated by malice, or his own wrong has occasioned the necessity on which he slays his adversary, or he does so to prevent the perpetration by the party slain of one of the offenses named in the code, must depend upon the circumstances of each case, and is always a question of fact to be determined by the jury.

What has been said in response to the argument that appellant was justifiable, because the deceased was in the act of perpetrating the offense of murder, is equally applicable to what is said of his right to protect himself against an unlawful and violent attack. (Code, 570.)

Appellant has no just ground to complain of the charge. It presents a full and elaborate exposition of the law applicable to the case. It may be that it was extended to greater length and went more into detail than was necessary; but we see nothing in it calculated to work prejudice or injury to appellant. It is insisted that it does not properly discriminate in the circumstances which sustain the defense of justifiable homicide under articles 568 and 570 of the code. In support of this objection we are cited to the case of Horback v. The State, 43 Tex., 242. The facts in the two cases are altogether dissimilar; consequently, while the charge, if the same, might in the one require a reversal of the judgment, it would not do so in the other. But admit-

ting that the phraseology of the charge in this particular may be somewhat inaccurate, it could have worked appellant no injury. In the Horback case the defendant relied upon the second of these articles. The court instructed the jury that unless the four propositions laid down in the charge were affirmatively established by the evidence, the defense was not sustained. This article of the code, as we held, did not make one of the propositions laid down by his honor a requisite to defendant's justification. But the facts in this case show that if appellant can claim that the killing was justifiable, evidently he must do so under the first of these articles rather than the second. And as the proposition which was held erroneously in the Horback case is not inappropriate to a charge framed on this article, it cannot be held an error for which the judgment should be reversed. The phraseology of the charge, as we have intimated, may be subject to criticism, but in our opinion it does no injustice to appellant ; and does not require any fact to be shown to establish his defense, which, in reference to the law and facts, can be said to have been unnecessary.

To show the killing justifiable under article 568, 1st, it must appear by acts, or by words coupled with the acts of the person killed, that it was the purpose and intent of such person to perpetrate one of the offenses named in this article; 2d, the killing must take place while the person killed was in the act of committing the offense, or after some act done by him showing evidently an intent to commit such offense.

By the instruction the jury were told that, 1st, homicide is permitted for the purpose of preventing an unlawful and violent attack on one's person of such a nature as to produce a reasonable expectation or great fear of death, or great bodily harm about to be inflicted; 2d, the killing must take place while the person killed was in the act of making such unlawful and violent attack. Thus far the charge,

though couched in more general language, embodies sub-
stantially the same legal propositions contained in the stat-
ute.    In the remaining part of the paragraph complained of
in the objection which we are now considering, the jury are
told the killing must occur under such circumstances that
the defendant could not save and protect himself from the
attack of his assailant by any lawful means except retreat-
ing, which, they are told, he was not bound to do; and if
he had time and opportunity, with safety to himself, to re-
sort to other means to protect himself, he was not justifiable
in killing.    Under the facts of this case this part of the
charge could have done appellant no injury.    It is manifest,
though an attack was made by the deceased upon appellant,
if such attack was occasioned by his own wrongful acts,
that appellant cannot be held, as we have previously said,
to have acted in self-defense in resisting it.    Obviously the
killing was not under circumstances such as appellant could
not, without retreating, have resorted to other means for
protection than he did.    Indeed this part of the charge does
no more than inform the jury that the killing must be in
fact in self-defense, and not merely colorably so.    This the
court was warranted in doing by article 657 of the code,
which declares the general and fundamental proposition
that homicide is permitted in the necessary defense of per-
son and property.    It is upon this proposition for their basis
that the circumstances and rules in articles 568 and 570 are
set forth under which it is permitted.

The charge is almost literally the same as was given in
the case of Isaacs *v*. The State, 25 Tex., 177, which received
the approval of this court.

We see nothing in the facts which made it incumbent on
the court to give a more full and explicit charge as to rea-
sonable doubt that it did, or to require the court to have
instructed the jury that no verbal provocation of the appel-
lant would justify homicide, or even an assault and battery
by the deceased.

The next error assigned in the order in which they have
been discussed by counsel is, that the court should have in-
structed the jury that appellant had a perfect right to seek
out the deceased for the purpose of demanding from him in
a peaceable manner a retraction of a charge false and derog-
atory to appellant's character. In this we cannot agree. If
the proposition suggests a sound principle of law, it is not ap-
plicable to this case. The evidence does not show that appel-
lant sought the deceased in a peaceable manner to ask a retrac-
tion of the charge it is said deceased had made against him.
On the contrary, it shows that threats of violence and to
take life had been mutually made by the parties, and each
of them was fully advised of this fact. That those of appel-
lant may have been of a conditional or qualified character,
is not sufficient to show that he sought the deceased for a
peaceable and lawful purpose. Both parties were armed,
and it is evident they were mutually seeking each other,
and could have had no reasonable anticipation other than
that such a meeting would probably result in a mortal
combat. Nor can it be said that appellant's approach and
style of addressing the deceased indicated a desire for a
peaceable adjustment of their differences. His hand was in
his pocket as he approached and while he addressed de-
ceased, and was evidently, as is shown by the denouement,
on his pistol. His inquiry of deceased, whether he had
made the statement which he had previously avowed his
intention to make deceased retract, was accompanied with a
threat. The language in which he addressed the deceased
was of a character and style of bravado, calculated to lead
to a difficulty. In view of the fact that the deceased had
armed and equipped himself before starting up the street,
where he knew appellant was, with the avowal that he was
then going to settle that difficulty, (and there can be no
doubt of the manner in which he designed settling it,) we
may reasonably infer that appellant's preparation and seem-
ing advantage for an immediate fight induced the deceased

to desire avoiding it, or at least induced him to procrasti-
nate and maneuver for an opportunity to enter upon it on
better terms than if he had at once accepted appellant's
guage of battle ; yet so fixed and manifest was appellant's
purpose, although when the deceased denied having made
the objectionable statement, and told appellant to go away
and leave him, and though deceased endeavored three times,
seemingly, at least, to leave appellant, he followed him,
saying he was not afraid of him, and notwithstanding the
previous denials, still telling him if he had made the alleged
statements he would whip him, or, as some of the witnesses
say, kill him, and when the deceased had been wrought up
to the fighting point, or the quarrel had reached that stage
to which he desired it should go, on the first hostile demon-
stration of the deceased, putting the case in the strongest
light for appellant, he draws his weapon and fires.

The facts admit of but one construction. Appellant did
not seek the deceased for the purpose or with the expecta-
tion of adjusting the difficulty in a peaceable manner. He
evidently intended and designed a combat with deadly
weapons, or to compel the deceased to succumb and show
the white feather. He forced the quarrel to its final and
fatal catastrophe, when, on that occasion at least, he might
have easily avoided it. Though the deceased may have
been equally or even more greatly in fault than appellant,
that does not excuse him.

There is no force in the objection that the judge who pre-
sided on the trial of the case was not authorized to hold the
court. The statute by which the court was created expressly
declares that it shall be lawful for the judge of said court
to exchange or alternate with any district judge, as pro-
vided by the Constitution and laws. (Acts 1873, p. 210.)
Certainly a judge is not limited in the discharge of the
fuhctions of his office to the period of time during which
the courts in his own district are being held. The right of
one judge to change or alternate with another is in no way

affected by the fact that their courts are not in session at the same time. Such a proposition cannot be sustained by the most technical construction of the Constitution and laws upon the subject.

Misconduct of the juror is not made an absolute ground of new trial. But when it is of this character it is addressed to the judgment of the court whether the misconduct of the jury has been such that the defendant has not received a fair and impartial trial. And though the decision of the court refusing a new trial, asked on this ground, is subject to review as in any other case where it is intrusted with the exercise of a judicial discretion, still we think this court should defer much to the judgment of the court below, in view of its better opportunity for observing and knowing all the facts transpiring during the progress of the case or developed on the hearing of the motion. For this court to reverse a judgment on the ground that such a motion has been overruled, it must be made plainly to appear that appellant has probably suffered injustice or sustained some injury by the ruling on the motion. We are unable to see that such is the fact in this case. The affidavits offered in support of the motion shows with reasonable certainty that one of the jurors who tried the case had formed and expressed an opinion of appellant's guilt before he was summoned as a juror, and could not be said to be an impartial juror. If such was the fact, and he answered the questions propounded to him when the jury were being impaneled so as to qualify himself to sit in the case, it may well be held that he was guilty of misconduct as a juror, for which a motion for a new trial upon this ground could be properly granted. But the matters alleged in these affidavits were positively denied under oath by the juror. And an explanation is given by him which tends to support his statement and account for the discrepancy in his version of the matter and that made by the other affiants. It is true there are two affidavits in support of the motion to one in rebuttal;

but we do not think the decision of the question presented by the motion should necessarily depend upon the mere outnumbering of the affidavits on the one side over those on the other.

It is objected that the affidavits of the juror whose conduct was impeached should not have been received for his vindication. The code expressly provides that the voluntary affidavit of the jurors are admissible to prove or disprove the alleged misconduct. The language seems to import that the affidavits of all the jurors are admissible, though the alleged misconduct might affect them all. That it is the juror who makes the affidavit who is charged with misconduct may detract from the credit to be given to his affidavit, but this is no ground for its exclusion. The juror might be the only person able to explain or deny the truth of the charge. If he could not be heard to do so, a new trial could always be had by an affidavit alleging admissions or statements of the juror to the affiant when no other person was present. A rule of such dangerous tendency cannot be sanctioned unless imperatively required.

The judgment is affirmed.

AFFIRMED.