[No. 1447.]

## LEVI KING *v.* THE STATE.

1. MURDER—EVIDENCE—PRACTICE.—When, in a trial for murder, the position of the slayer was a material inquiry, it was proper to admit in evidence the garments proved to have been worn by the deceased at the time of the shooting, if they tended to show the position of the slayer. And if such evidence was objected to by the defendant, his bill of exceptions should show wherein it was improper and inadmissible.

2. SAME—SELF-DEFENSE—CHARGE OF THE COURT.—Where, in a trial for murder, self-defense is an issue clearly raised by the evidence in the case, it is the right of the defendant to have the law upon that subject explained to the jury fully and correctly, in all the phases in which it might be applicable to the facts in proof.

3. SAME.—On the subject of self-defense, the trial court instructed the jury that "a man in his own necessary self-defense has the right to repel unlawful force, with that degree of force necessary to effect the purpose, and, in the exercise of a reasonable discretion, such as would usually influence and govern ordinarily prudent men in like condition and situation as himself, may, in a case of extreme necessity, to prevent the sacrifice of his own life, or serious bodily harm, and as a last resort, take the life of his assailant. But if his resistance extends beyond that of lawful self-defense for himself, and he seeks to become the executioner of his own vengeance, and the death of his adversary thereby ensues, he then becomes an offender, and the plea of self-defense would not avail him." *Held*, error, in that it limits the right of self-defense to an extreme necessity, and as a last resort. Article 569 *et seq.* of the Penal Code, which prescribes the rules governing self-defense, and defines the circumstances under which a homicide will be considered justifiable, do not thus circumscribe the right of self-defense.

4. SAME.—Under the law of this State, when a homicide takes place to prevent murder, maiming, and certain other offenses named in Article 570 of the Penal Code, and under the circumstances therein mentioned, the assaulted party need make no effort at avoidance, but may kill his assailant without retreating and without resorting to other means to avert the danger. See this case for a state of proof under which it was the duty of the court to give in charge to the jury the substance of Article 571 of the Penal Code.

5. SAME.—On the same subject the trial court charged the jury that, if the defendant and the deceased were enemies to each other, and the defendant went to the house or premises of the deceased in the night time, armed with a gun, and appeared to the deceased under such circumstances as required the deceased to become the actor in his own defense, and thereby the defendant's life became imperiled, and in that condition,

he took the life of the deceased, he could not avail himself of the plea of self-defense. *Held*, that the instruction is erroneous, because it makes the defendant's right of self-defense depend alone upon the impression made by his conduct upon the mind of the deceased; and, because, however innocent may have been his intentions in going upon the premises of the deceased in the night time, and armed, it would deprive him absolutely and entirely of the right to defend himself against an assault, however deadly, which might have been made by the deceased; thereby ignoring that rule of law which, while it accords the right of self-defense plenarily to him only who acts from necessity, and is himself without fault, does not wholly deny it to him who, when detected in a wrongful act, is assaulted by the person aggrieved, and kills the latter to save his own life. See the opinion *in extenso* on the distinction between the perfect and imperfect right of self-defense, and for a state of case wherein the jury should have been instructed on the doctrine.

6. SAME.—The rules on the doctrine of self-defense when the occasion of the homicide was produced by the act of the slayer may be thus stated: 1. When the slayer provoked the combat, or produced the occasion, in order to have a pretext for killing his adversary, or doing him great bodily harm, the killing will be murder, no matter to what extremity he may have been reduced in the combat. 2. But if the slayer provoked the combat, or produced the occasion wrongfully, but without any felonious intent, the killing in self-defense will be manslaughter only.

7. SAME—IMPERFECT RIGHT OF SELF-DEFENSE—MANSLAUGHTER.—If, then, under the rules announced, the defendant in this case went upon the premises of the deceased, for the purpose of killing the deceased, or doing him great bodily harm, or for the purpose of committing any felony, and thereby produced the occasion for the killing, he cannot, to any extent, avail himself of the plea of self-defense, and the homicide would be murder of the first or second degree, according to the other facts in proof. But if, on the other hand, his presence on the premises was casual, without intent to injure the deceased or his property, or to commit any felony, and his presence produced the necessary occasion for the killing of the deceased, to save his own life or protect himself from serious bodily harm, then he would not be guilty of murder in the first degree, but his unauthorized presence upon the premises of the deceased, being a trespass, was a wrongful act, and the defendant's right of self-defense would be partial or imperfect, not affording complete justification of the homicide, but having the effect only to reduce it from murder to manslaughter. *Held*, therefore, that the charge of the court was erroneous, in failing to explain and present to the jury the law governing every phase of self-defense, perfect and imperfect, called for by the evidence; in failing to explain the effect of imperfect self-defense in determining the grade of the homicide; and under the evidence, in view of the issue presented by the plea of self-defense, in failing to instruct the jury upon the law of manslaughter.

8. INSANITY—CHARGE OF THE COURT—CASES APPROVED.—Upon the question of insanity, the rules announced in *Webb* v. *The State*, 9 Texas Ct. App., 490, and in *King* v. *The State*, Id., 515, by a majority of the court

referred to and approved. The charge of the court, on this question in this case, being in substantial conformity with the rules laid down in the cases cited, is held correct.

Appeal from the District Court of Wood. Tried below before the Hon. J. C. Robertson.

This appeal is from a second verdict of murder in the first degree, returned against the appellant under an indictment charging him with the killing of Doctor H. W. Harrington, in Wood county, Texas, on the twenty-second day of March, 1880. The former case is reported in full in the ninth volume of these Reports, beginning on page 515. The penalty imposed by the jury in this last trial was a life term in the penitentiary.

The testimony on this trial was essentially the same as that adduced on the former trial, and which is embodied in the report of that case. Several additional witnesses were introduced by the defense, whose testimony was descriptive of the demeanor and conduct of the defendant, which, to most of the witnesses, indicated a mind diseased or deranged.

The defendant applied for a new trial on the following grounds:

Because the court failed to charge the whole of the law applicable to the case.

Because the court failed to charge all the law applicable to the charge of murder, especially to charge upon murder in the second degree.

Because the court failed to charge the law of manslaughter.

Because the court failed to charge the law on the subject of insanity, and especially in charging "that the jury must believe that the mind of the defendant was diseased to such an extent that it overwhelmed the reason, conscience and judgment, and that the defendant, in committing the homicide, acted from an irresistible and uncontrollable impulse, then it would be the act of the body without the conscience of the mind, before they could acquit on this plea."

Because the court erred in refusing special charges asked.

Because the court erred in charging the jury that the "insanity of the defendant must be clearly established to your satisfaction by the weight or preponderance of evidence."

Because the court erred in allowing the State to introduce the coat and pants of the deceased in evidence.

Because the court erred in failing to charge the jury that, if

they had a reasonable doubt upon the whole case, they should acquit the defendant.

Because the verdict of the jury was contrary to the law and the evidence.

The opinion of this court elucidates all other matters requisite to a clear understanding of the rulings.

*W. S. Herndon*, for the appellant, filed an able and exhaustive brief.

*H. Chilton*, Assistant Attorney General, for the State.

WILLSON, J. Upon the trial of this case, the State, over defendant's objections, was permitted to introduce and exhibit to the jury a coat and pair of pants which were proved to have been on the person of deceased at the time he was shot. Testimony of this character is oftentimes pertinent, material and admissible. (*Hubby* v. *The State*, 8 Texas Ct. App., 806; *Early* v. *The State*, 9 Texas Ct. App., 485.) In this instance it is not made to appear by the defendant's bill of exceptions, or otherwise, that the exhibition of this clothing to the jury was improper and inadmissible. It is disclosed by the evidence that the position of the person who fired the fatal shot, at the time it was fired, was a material inquiry on the trial, and was left in doubt. This being the case, the clothing in question, which probably had been perforated by the leaden messengers which produced the death of deceased, might furnish most convincing proof of the exact position of the slayer when he fired the shot. Viewing the matter as presented by the record, we are not prepared to say that the court erred in admitting the clothing before the jury.

We come now to a consideration of the charge of the court, which is complained of in many particulars by the defendant. It embraces murder in the first degree, self-defense and the defense of insanity. Murder in the second degree and manslaughter are not presented by it. We will first examine that portion of the charge of the court which undertakes to instruct the jury upon the rules governing self-defense, as this will enable us the more readily to dispose of the other questions arising upon the charge.

Self-defense is an issue very clearly raised by the evidence in the case, and it was the right of the defendant to have the law upon this subject explained to the jury fully and correctly, in all

the phases in which it might be applicable to the facts in proof. (*Edwards* v. *The State*, 5 Texas Ct. App., 47.) In undertaking to perform this duty, the learned judge begins his charge upon the subject of self-defense with the following clause:

"A man in his own necessary self-defense has the right to repel unlawful force with that degree of force necessary to effèct the purpose, and, in the exercise of a reasonable discretion, such as would usually influence and govern ordinarily prudent men in like condition and situation as himself, may, in a case of extreme necessity, to prevent the sacrifice of his own life, or serious bodily harm, and as a last resort, take the life of his assailant. But, if his resistance extends beyond that of lawful self-defense for himself, and he seeks to become the executioner of his own vengeance, and the death of his adversary thereby ensues, he then becomes an offender, and the plea of self-defense would not avail him."

Our Code plainly prescribes the rules governing self-defense, and clearly points out the circumstances under which a homicide will be considered justifiable. (Penal Code, Arts. 569, 570, 571, 572, 573, 574 and 575.) No where in the Code, or in any other law of this State, do we find self-defense limited to a case of *extreme necessity*, or that a party can only avail himself of it as a *last resort*. These expressions of the learned judge are unknown to our law, and are certainly too broad and unqualified, when compared with the rules governing self-defense prescribed in the foregoing cited articles of our Penal Code.

Under our law, when the homicide takes place to prevent murder, maiming and certain other offenses named in Article 570 of the Penal Code, and under the circumstances therein mentioned, the assailed party need make no effort at avoidance, but may kill his assailant without retreating or without resorting to other means to avert the danger. This is the plain and well settled law of this State. (*Kendall* v. *The State*, 8 Texas Ct. App., 569; *Ainsworth* v. *The State*, 8 Texas Ct. App., 532; *Blake* v. *The State*, 3 Texas Ct. App., 588; *Jordan* v. *The State*, 11 Texas Ct. App., 435.) That the portion of the court's charge which we have quoted restricts and limits the right of self-defense as guaranteed by the law, there can be no doubt, and it was certainly calculated to have an effect injurious to the rights of the defendant. If there was no evidence in the case raising the issue of self-defense, or if the errors in this clause were corrected and cured by other parts of the charge, we might treat it

as immaterial, and insufficient to demand of this court a reversal of the judgment; but such is not the case, and we must hold it to be fatal to the conviction.

In this connection we will also say that in our opinion the court should have given in charge the substance of Article 571 of the Penal Code. It is claimed by the defendant that the deceased, at the time the fatal shot was fired, was pursuing and in the very act of shooting him with a pistol, a deadly weapon. There is evidence in support of this claim. It was therefore his right to have the benefit of an instruction to the jury embodying the provision of the Code last cited. (*Kendall* v. *The State*, 8 Texas Ct. App., 569.)

There is another portion of the court's charge upon the subject of self-defense, which we cannot approve. It reads as follows: "If the defendant and Doctor H. W. Harrington were enemies to each other, and the defendant went to the house or premises of Doctor H. W. Harrington in the night time, armed with a gun, and appeared to said Harrington under circumstances as required the said Harrington to become the actor in his own defense, and thereby the defendant's life became imperiled, and in that condition he took the life of the said Harrington, he could not avail himself of the plea of self-defense."

This makes the defendant's right of self-defense depend alone upon the impression made by his conduct upon the mind of Harrington. No matter how innocent his intentions might be in going upon Harrington's premises in the night and armed, the rule prescribed by the court would deprive him, absolutely and entirely, of the right of defending himself against any assault, however deadly it might be, which Harrington might make upon him. We cannot give our sanction to this doctrine to its full extent, and in the shape in which it is presented in this charge. Our understanding of the law is different. "The accused is always guilty or innocent from his own standpoint, that is, his personal, individual acts with relation to the matter charged." (*Reed* v. *The State*, 11 Texas Ct. App., 509.) In the case last cited, in treating of self-defense, the court says: "It may be divided into two general classes, to-wit, perfect and imperfect right of self-defense. A perfect right of self-defense can only obtain and avail where the party pleading it acted from necessity, and was wholly free from wrong or blame in occasioning or producing the necessity which required his action. If, however, he was in the wrong—if he was himself violating, or in the

act of violating, the law—and on account of his own wrong was placed in a situation wherein it became necessary for him to defend himself against an attack made upon himself, which was superinduced or created by his own wrong, then the law justly limits his right of self-defense, and regulates it according to the magnitude of his own wrong. Such a state of case may be said to illustrate and determine what, in law, would be denominated the imperfect right of self-defense. Whenever a party, by his own wrongful act, produces a condition of things wherein it becomes necessary, for his own safety, that he should take life or do serious bodily harm, then, indeed, the law wisely imputes to him his own wrong and its consequences to the extent that they may and should be considered in determining the grade of offense which, but for such acts, would never have been occasioned."

Now, in the case at bar, suppose the defendant went upon the premises of the deceased in the night time and armed, and yet without any intention to commit a felony, or without any intention to do any injury to Harrington or his property, or without any intention to provoke a conflict with Harrington—that he was merely a trespasser upon the premises, and that Harrington, seeing him there, made a deadly assault upon him, and the defendant, in protecting his life against such assault, slew Harrington, would he be guilty of murder in the first degree? Would he be deprived entirely of the shield of self-defense? Would he not, at least, be entitled to have the circumstances considered in determining the grade of homicide of which he would be guilty? Under the authority of *Reed* v. *The State, supra,* and which case we think announces the correct doctrine, the defendant was entitled to have an instruction from the court applicable to this phase of the case. Being a trespasser upon another person's premises, he would be a wrong doer, and if his wrongful act produced the occasion which made it necessary for him, in order· to protect his own life, to slay his assailant, his self-defense would not be perfect; that is, he could not thereby wholly justify his act, which was occasioned by his own wrong, but still, in our opinion, there would be a partial or imperfect self-defense, which might reduce the homicide to manslaughter. We think this view of the law is in harmony with our code, and with the decisions construing it. It is not in conflict with the well settled doctrine that he who seeks and brings on a difficulty cannot avail himself of the right of self-defense in order to shield him-

self from the consequences of killing his adversary. In fact, it is the same doctrine, and is recognized and maintained by the best authority. Horrigan & Thompson, in their Cases on Self-Defense, in a note to *Stoffer* v. *The State*, page 227, state the doctrine as follows:

"1. If he (the slayer) provoked the combat or produced the occasion, in order to have a pretext for killing his adversary, or doing him great bodily harm, the killing will be murder, no matter to what extremity he may have been reduced in the combat.

"2. But, if he provoked the combat or produced the occasion without any felonious intent—intending, for instance, an ordinary battery merely, the final killing in self-defense will be manslaughter only."

Now, apply these rules to the case before us. If the defendant went upon the premises of deceased for the purpose of killing the deceased, or doing him great bodily harm, or for the purpose of committing any felony, and thereby produced the occasion of the killing, he cannot to any extent avail himself of the plea of self-defense, and the homicide would be murder of the first or second degree, according to the other facts in evidence. If, on the other hand, his presence upon the premises was only casual, without any intent on his part to injure Harrington or his property, or to commit any felony, and his presence produced the occasion which made it necessary for him to kill Harrington to save his own life, or to protect himself from serious bodily harm, then he would not be guilty of murder in the first degree; but his presence upon Harrington's premises without Harrington's consent being a trespass, was a wrongful act on the part of defendant, and his right of self-defense would therefore be partial and imperfect, not affording a complete justification of the homicide, but having the effect only to reduce the grade of it from murder to manslaughter.

It may be supposed that the views we have announced are not in accordance with the doctrine enunciated in *Gilleland* v. *The State*, 44 Texas, 356. We must consider that case with reference to the facts upon which the opinion was based, and when this is done it will be perceived that the rules applicable to self-defense therein declared are in harmony with those we have herein expressed. Such, at least, is our understanding of that case.

Our conclusions, therefore, in regard to the charge of the court upon self-defense are as follows:

1. There was error in the two clauses of the charge we have quoted.

2. Every phase of self-defense, perfect and imperfect, called for by the evidence, should have been explained and presented by the charge, for the consideration of the jury.

3. The effect of imperfect self-defense in determining the grade of the homicide should have been explained. We also conclude that, under the evidence, the court should have charged upon manslaughter, in view of the issue presented by the plea of self-defense.

In regard to the defense of insanity, while the charge of the court upon this subject is perhaps unnecessarily voluminous, and not as clear and perspicuous as it might be, still we think it sufficiently presents the correct rules for the determination of that issue. (*Webb* v. *The State*, 9 Texas Ct. App., 490; *King* v. *The State*, Id., 515, the last named case being this same case on a former appeal.)

Other questions presented in the record are not determined because they are of that character not likely to occur on another trial. Because the court erred in its charge to the jury in the particulars we have mentioned, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered November 22, 1882.