## C. W. BRAZZIL v. THE STATE.

*No. 6782.   Decided June 11.*

**Murder—Self-Defense—Charge of the Court.**—The general rule is well established that "a conflict provoked by a defendant can not be set up by him as a defense," and that "where a defendant by his own wrongful act has brought about the necessity of taking life, he can not plead that such killing was in his necessary self-defense." But it is a rule equally as well established that "though the defendant may have thus provoked the conflict, yet if he withdraws from it in good faith, and clearly announces his desire for peace, then if he be pursued his rights of self-defense revive." The evidence on this trial established two separate and distinct conflicts, the first of which was provoked by the defendant with deadly intent, but was abandoned by him in good faith.   Under such circumstances the first conflict could have no bearing whatever upon the subsequent one, save to illustrate the malice or intent of the parties in engaging in it.   The trial judge, however, in his charge to the jury treated the case mainly as presenting a single continuous combat, and upon the main phases iterated and reiterated to the jury that the defendant could not claim his defenses if he brought on or produced the conflict. *Held*, error, and that the question of provoking a difficulty, if necessary to be submitted at all, should have been expressly limited to the acts and conduct of the parties in the last combat.

APPEAL from the District Court of Coryell.   Tried below before Hon. C. K. Bell.

This conviction was in the second degree for the murder of J. V. Matthews, and the penalty awarded the appellant was a term of seven years in the penitentiary.

The facts of the case, so far as they are involved in the ruling of the court, appear in the opinion.

*Vardiman, White & Taylor* and *McDowell & Miller,* for appellant.

*W. L. Davidson,* Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE.—On the morning of the 25th day of December, 1889, J. V. Matthews, the deceased, had a fight with D. Brazzil, a brother of the appellant, in a little village called "The Grove." D. Brazzil was drunk at the time, and was badly beaten and used up by Matthews in the fight. Appellant was at a dance in the country a few miles away at the time of this occurrence, but was informed of it an hour or so after it occurred, and expressed his determination to go to the village and see if the deceased could do him that way. He went to the village some time between 3 and 4 o'clock in the afternoon, and about three-quarters of an hour before the difficulty the parties met at the post-office, but nothing was said, and no ill feeling exhibited by either of them. Two rencounters took place between the parties afterwards, in the last of which the deceased was killed by appellant. At the time of the first difficulty the deceased was standing behind the counter in Cliff Graham's store looking at some young men who were trying to work out a Chinese puzzle. Defendant came in at the front door of the house and, walking up to the end of the counter, stepped around behind the counter within three or four feet of deceased and said to him, "You are the d—d son-of-a-bitch that beat my brother up this morning while he was drunk." Immediately both men drew their pistols and the defendant struck the deceased over the head with his pistol. Deceased shoved his pistol under and near the breast of the defendant, and just as the pistol fired the defendant struck deceased across his arm with his, defendant's, pistol, and the deceased's pistol, which had just fired, dropped from his hand and fell upon the floor behind the defendant. Deceased then ran back towards the south end of the house, the defendant following with pistol in hand about half way the length of the room. As deceased passed out the back door the defendant stopped, turned, and came back, and when asked "why he did not shoot deceased" replied, "I can't shoot a man in the back," or "I won't shoot a man in the back." Defendant was also asked if he had been wounded when deceased's pistol fired. He answered "yes," and pulled back his clothing and showed a bullet hole in his vest and wound in his breast. Much confusion was occasioned by a crowd gathering around the defendant, examining his wound and talking to him.

Thus occurred and ended the first difficulty. Meantime deceased had gone across the street to the store of W. J. Graham. Upon entering this store he asked Graham for a pistol. Graham told him he did not need a pistol, and that he had better have the doctor dress the wounds on his head. Deceased went back, sat down, and the doctor commenced wiping the blood from his head. When the doctor turned around for something the deceased got up and went hurriedly out of the front and north end of the house, saying he was going to get his pistol. He went rapidly in the direction of Cliff Graham's store, where the defendant still was, and was almost in a run when defendant's attention was called to the fact that he was coming. When deceased got within about ten feet of the gallery of Cliff Graham's store, the defendant, who was just inside the door, said, "Stop, Matthews, stop! Don't come in here! I don't want to shoot you." Deceased continued to advance faster, and just as he placed his foot on the steps leading on the gallery the defendant fired, the shot passing over the deceased. Defendant fired again and missed. Deceased then jumped on to the gallery and into the door, and grappled with defendant. He pushed the defendant rapidly back across the store to the northwest corner against the wall, the defendant all the time going backward and trying to strike deceased over the head with his pistol. When they reached the corner the defendant shoved or knocked deceased loose from him, stepped from behind him, shoved his pistol forward, and fired, and the deceased fell upon his face and expired in a very short time.

The facts we have stated constitute substantially the important and in the main the undisputed facts in the case. From this statement it is, we think, apparent that there were two separate and distinct rencounters between the parties. That the defendant abandoned the first difficulty, even though it may be conceded that he provoked and brought it on with a deadly purpose, we think is equally clear. He is shot in the breast; he disarms his antagonist, and when his antagonist flees he pursues him with pistol in hand but a short distance and then returns, saying he can not shoot a man in the back. His antagonist has gone entirely across the street into another store, for safety or in search of another weapon. Defendant, however, does not appear to know or to be even considering his purpose, but is intent upon examining the extent of and talking about his own wound. Two or three minutes at least must have elapsed before the deceased is seen returning rapidly, and before defendant is notified of his approach. Deceased, when seen by defendant, is approaching in an angry, threatening manner—almost in a run—and, according to some of the witnesses for the defense, with his hand hanging down by his side.

It is a general and well established rule of law that "a conflict provoked by a defendant can not be set up by him as a defense" (Whart. on Hom., sec. 482), and that "where a defendant by his own wrongful act has brought about the necessity of taking life, he can not plead that such

killing was in his necessary self-defense." Gilleland v. The State, 44 Texas, 356; Willson's Crim. Stats., sec. 1070.    But it is a rule equally as well settled and established that, "though the defendant may have thus provoked the conflict, yet if he withdraws from it in good faith, and clearly announces his desire for peace, then if he be pursued his rights of self-defense revive." Whart. on Hom., sec. 483.

The further rule is laid down in Stoffer's case, 15 Ohio State, 47, that "the conduct of the accused relied on to sustain such a defense—of justi-- fiable homicide—must have been so marked in the matter of time, place, and circumstance as not only clearly to evince the withdrawal of the ac-- cused in good faith, but such also as fairly to advise his adversary that his danger had passed, and make *his* conduct thereafter the pursuit of ven- geance rather than measures taken to repel the original assault." See this case reported in full in 1 Criminal Defenses, 213, and notes to the same by Horrigan & Thompson.

Applying these rules to the case in hand, we think it evident that though defendant had provoked the original contest for the purpose of bringing on a deadly combat, yet he most ciearly and unmistakably abandoned the same, and withdrew from it in good faith, and under cir- cumstances such as fairly to advise Matthews that his, the latter's, dan-- ger was past.    Matthews, without pursuit from defendant, had crossed the street and secured his safety beyond all question in another store house.

So far as defendant was concerned it appears that the contest was en- tirely and completely at an end—he was not even threatening to renew it.    Such being the case, the former or first difficulty had nothing to do· with the second and last, save to illustrate the malice by which the par- ties might be actuated in engaging in a second.    Its relation to the second would be about the same as though it had happened the day, week, or month before.    It would only be legitimate evidence as to ill will and former grudges on the question of malice or the intent of the parties.

In his charge to the jury the learned trial judge has treated the case mainly as presenting but a single continuous combat, and upon the main phases has iterated and reiterated to the jury that defendant could not claim his defenses if he brought on or produced the conflict.    If defend- ant did not bring on or provoke the last difficulty, then his right of self- defense was perfect, and in no manner abridged by the first, which he had abandoned and absolutely withdrawn from, and which was in fact at an end and a matter of the past.    Oakley v. Comm. (Ky.), 11 S. W. Rep., 72.    The question of provoking a difficulty, if necessary to be sub-- mitted at all, should have been expressly limited to the acts and conduct of the parties in the last fight.

Because we are of opinion that the charge of the court with reference to provoking the difficulty was calculated to mislead, and did probably

mislead the jury to the prejudice of appellant, the judgment is reversed and cause remanded.

*Reversed and remanded.*

Judges all present and concurring.